IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE OLGA J. NOWAK IRREVOCABLE TRUST, ) ) ) | |
| *Plaintiff*, ) ) | |
| v. ) ) | Civ. No. 17-1404-RGA |
| VOYA FINANCIAL, INC.; SECURITY LIFE OF DENVER INSURANCE COMPANY; ) ) ) | |
| *Defendants*. | |

**MEMORANDUM**

Currently before the court is a motion filed by Plaintiff, The Olga J. Nowak Irrevocable Trust, to remand this action to the Superior Court of the State of Delaware pursuant to 28 U.S.C. § 1447 on the ground that diversity of citizenship is lacking. (D.I. 12).

On May 18, 2017, Plaintiff filed a civil action in the Delaware Superior Court against defendant Voya Financial, Inc., asserting several state law claims based on Voya's failure to pay a death benefit purportedly owed under a life insurance policy. (D.I. 1-2). On September 6, 2017, Plaintiff amended its complaint to add a subsidiary of Voya, defendant Security Life of Denver Insurance Company (collectively with Voya, "Defendants"). (D.I. 1-4). Security thereafter removed the action to this court pursuant to 28 U.S.C. § 1441. (D.I. 1). Security contends that this court has diversity jurisdiction over the matter even though Plaintiff and Voya are both citizens of Delaware, because Voya was fraudulently joined. (*Id.*).

In support of its fraudulent joinder assertion, Security attached the declaration of Jean Weng, Voya's Corporate Secretary and Deputy General Counsel, to the removal notice. (D.I. 1-1). In response, Plaintiff has filed a motion to strike the Weng declaration. (D.I. 16). Plaintiff

1

argues that the declaration sets forth unsupported facts and conclusions of law that contradict the allegations in the complaint. (D.I. 13 at 1). For the reasons set forth below, Plaintiff's motion to remand is granted, and Plaintiff's motion to strike is dismissed as moot.

## I. BACKGROUND[1]

### A. The Insurance Policy

In 1999, the Nowak family was exploring strategies to preserve the wealth of Olga J. Nowak, who was then 83 years old. (D.I. 1-4 at ¶ 17). Acting on the advice of Mark Wilcock, an agent of Southland Life Insurance Company, the Nowak family established The Olga J. Nowak Irrevocable Trust. The Trust then purchased a life insurance policy on the life of Ms. Nowak from Southland. (*Id.*). The policy had an annual premium of approximately $250,000 and a death benefit of $4 million. (*Id.* at ¶ 18).

According to the amended complaint, at the time Plaintiff purchased the life insurance policy, Mr. Wilcock represented that the $4 million death benefit would continue to be payable even if Ms. Nowak lived beyond 100. (D.I. 1-4 at ¶ 18). Defendants repeatedly confirmed Plaintiff's understanding of the mechanics of the insurance policy by providing illustrations on January 3, 2002, March 5, 2004, February 1, 2006, February 7, 2008 and April 9, 2009 that did not show the death benefit declining or terminating after the attained age of 100. (*Id.* at ¶ 19). Instead, the illustrations showed the policy paying a $4 million death benefit until Ms. Nowak reached an "end of year age" of 110. (*Id.* at ¶ 20).

In 2010, however, Mr. Wilcock sent Plaintiff an illustration prepared by Defendants which ended at an "end of year age" of 100, not 110. (*Id.* at ¶ 22). Plaintiff raised questions about the

---

[1] The facts provided herein are taken from the amended complaint and assumed, for the purposes of this opinion, to be true.

2

change in the illustration and language in the policy regarding the "surrender value." (*Id.* at ¶¶ 21-24). Mr. Wilcock assured Plaintiff that it was misreading the policy and that "the death benefit is the surrender value thus 4M is the surrender value." (*Id.* at ¶ 23). Separately, Defendants said that their system "now cannot illustrate past age 100." (*Id.* at ¶ 24). In 2011, however, Plaintiff received a policy illustration which illustrated the policy out to the age of 110. (*Id.* at ¶ 25). It showed, for the first time, that after age 100 the death benefit changed from $4 million to the "surrender value," which was a significantly smaller sum than the death benefit. (*Id.* at ¶¶ 25-27).

This is the position Defendants now take in litigation: the $4 million death benefit was payable only until the insured's "attained age" of 100.[2] (D.I. 7 at ¶ 1). Once the insured reached the attained age of 100, the death benefit became the "surrender value." (D.I. 1-4 at ¶ 11; D.I. 7 at ¶ 11). Ms. Nowak passed away on June 29, 2016, 130 days past the attained age of 100. (D.I. 1-4 at ¶¶ 11, 31). Thus, Plaintiff is entitled to the surrender value of $336,242. (*Id*). Plaintiff, however, has paid over $3 million in premiums. (*Id.*).

## B. The Parties' Involvement in the Insurance Policy

Sometime before January 2002, Internationale-Nederland Group of the Hague ("ING") acquired Southland, the company from whom Plaintiff had purchased the insurance policy. (*See* D.I. 12-1, Exs. A1 and A2). Two years later, in October 2004, ING caused its subsidiary, Southland, to merge into another wholly-owned subsidiary, Security, with Security as the surviving entity. (*Id.* at Ex. B). Security is a Colorado corporation with its principal place of

---

[2] "Attained age" is a defined term in the insurance policy that means "the Insured's Age plus the number of completed Policy Years." (D.I. 18-1, Ex. 1 at 7). The parties do not seem to use "attained age" consistent with the policy definition, since it would seem to me that Ms. Nowak's attained age under this definition would have reached 100 in about 2007 or 2008. That is, she would have then reached age 92 and had the policy for eight years. For the purpose of the remand motion, I do not need to figure this out.

3

business in Minnesota. (D.I. 1 at ¶ 10; D.I. 1-4 at ¶ 16). In 2014, ING changed its name to Voya. (D.I. 1-4 at ¶ 2). Voya is a Delaware corporation. (*Id.* at ¶ 16).

The complaint alleges that Defendants sent several communications to Plaintiff on ING letterhead and included various self-references (used interchangeably) to "Southland Life Insurance Company," "ING," "ING Southland Life," and "ING Security Life" without making any substantive distinction among the entities and without suggesting that each had not assumed liabilities under the insurance policy. (D.I. 1-4 at ¶ 2). Plaintiff makes particular note of an October 1, 2004 communication on ING letterhead informing policyholders of the merger between Southland and Security which states: "So, while Southland Life has merged into Security Life, our commitment to you is constant, and fulfilling our contractual obligations to you is our highest priority. ING remains dedicated to helping its member companies provide first-rate service, diversified product options, and exceptional communications to all its customers." (D.I. 12-1, Ex. B.). That letter directs inquiries for more information to the "ING Service Center" and lists its return address as the "ING Service Center." (*Id.*). It also states that requests for forms from Security are to be directed through the "ING Service Center." (*Id.*). Other documents Plaintiff notes are: a March 5, 2004 policy illustration faxed from an ING fax number with an ING return address stating it is from the "ING ILLUSTRATIONS DEPARTMENT, Minot Service Center" (D.I. 12-1, Ex. A2); a February 1, 2006 policy illustration faxed from an ING fax number with an ING return address, stating it is from "ING," and stating that the policy was "Serviced by: ING Security Life" (*Id.* at Exs. A3 and A4); a February 7, 2008 policy illustration faxed from an ING fax on ING letterhead, indicating that the policy is "serviced by: Home Office PO Box 5065,

4

Minot, ND 58702–5085," which is the home office address for ING, not Security[4] (*Id.* at Ex. A5); and a July 14, 2015 email enclosing policy illustrations on "Voya Financial" letterhead, including Voya's address in Minot, and stating that the illustration was prepared by "Voya Service Center." (*Id.* at Ex. A6). Plaintiff asserts that none of these "entities"—ING Illustrations Department, ING Security Life, ING Security or ING Service Center—is registered as a separate corporation nor as a fictitious name under which any Defendant is transacting business. (D.I. 12-2).

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant in a state court action can remove the case to federal court if the federal court would have original jurisdiction over that action. This court has original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). When a case involves multiple parties, there must be complete diversity— i.e., "no plaintiff [may] be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). However, the complete diversity rule may be disregarded where a defendant has been fraudulently joined. *Balazik v. Cty. of Dauphin*, 44 F.3d 209, 213 n. 4 (3d Cir. 1995).

"[J]oinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990) (citations omitted). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants,

---

[4]  Security's home office address is 1290 Broadway, Denver, CO 80203-5699. (D.I. 12-1, Ex. B at 3).

the federal court must find that joinder was proper and remand the case to state court." *Id.* (citations omitted). For the joinder to be fraudulent, plaintiff's failure to state a claim must be "obvious according to settled rules of the state." *Id.* at 112. The court must resolve in favor of the plaintiff "all contested issues of substantive fact" and any "uncertainties" as to the controlling substantive law. *Id.* at 111. "[A]ll doubts should be resolved in favor of remand." *Id.*

## III. DISCUSSION

The amended complaint asserts seven claims against Defendants. Five of those claims are based on the contract: Breach of Contract (Count I); Bad Faith Breach of Contract (Count II); Reformation Based upon Mutual Mistake (Count IV); Reformation Based upon Mistake Coupled with Inequitable Conduct (Count V); and Unconscionability (Count VI). (D.I. 1-4 at ¶¶ 35-63). The remaining two claims are Violation of the Delaware Consumer Fraud Act (Count III) and Unjust Enrichment (Count VII). (*Id.*).

Defendants' grounds for removal and defenses to the motion to remand rely on disputes of fact and law. According to Defendants, Voya "did not issue or underwrite the Policy, did not provide the illustrations Plaintiff alleges were misleading, and had no involvement in the Policy's administration." (D.I. 1 at ¶ 17). Any communications that appeared to be from Voya due to the presence of Voya's logo, contact information, and references to itself, were mere "branding" for which it cannot be held liable. (*Id.* at ¶¶ 18, 24). Thus, Plaintiff's contract claims fail, because Voya is not, and never has been, a counterparty to the insurance policy. (D.I. 18 at 10). Plaintiff's unjust enrichment claim fails because Voya has not received or retained any benefit, money, or property of Plaintiff. (*Id.* at 16). And, Voya's consumer fraud claim fails, because "post-sale representations which are not connected to the sale or advertisement of the [policy] do not constitute consumer fraud under the act." (*Id.* (quoting *Norman Gershman's Things to Wear, Inc.*

6

*v. Mercedes-Benz of N. Am., Inc.*, 558 A.2d 1066, 1074 (Del. Super. Ct. 1989)). Defendants support these assertions through the declaration of Voya's Corporate Secretary and Deputy General Counsel, which provides facts contrary to the complaint and not yet subject to discovery or cross-examination. (D.I. 1-1 at ¶¶ 7-8).

Defendants' assertions may yet be vindicated, but they are not, under the lens with which the court must review the complaint, "obvious." During the life of the policy, there was one acquisition (when Voya purchased Southland), one merger (when Voya merged Southland into Security), and several years between these two events. It is not obvious which entity held which legal obligations at which point or whether any changes in obligor has an impact on who may now be held liable for Plaintiff's claims. Defendants complain that Plaintiff fails to distinguish between the various entities involved in the insurance policy. But the amended complaint itself alleges that Defendants did not make any substantive distinction among these entities and did nothing to correct the misleading suggestion that each had assumed liabilities under the insurance policy. (D.I. 1-4 at ¶ 2). Plaintiff points, for example, to various communications where Defendants referred to themselves as "ING Southland Life," and "ING Security Life." (*Id.*). Plaintiffs also point to communications from Defendants stating that the policy and/or policy illustrations are "serviced by: ING Security Life" or ING's "Home Office." (D.I. 12-1, Exs. A3, A4, and A5).

In the end, these communications may not be sufficient to find Voya (as the successor to ING) liable on any of Plaintiff's claims. But "it is possible that a party is not fraudulently joined" even if "the claim against that party ultimately is dismissed for failure to state a claim." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992). After a careful reading of the parties' papers, the court finds that a resolution of the parties' disputes requires a level of scrutiny into the

7

facts and law that goes beyond what is permitted on a motion to remand. Accordingly, the motion to remand is granted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (D.I. 12) is granted. This action is remanded to the Superior Court of the State of Delaware in and for New Castle County. Plaintiff's motion to strike (D.I. 16) is dismissed as moot.

An appropriate order will be entered.

Dated: August __3__, 2018

_Richard G. Andrews_
UNITED STATES DISTRICT JUDGE

8